Affirmed and Memorandum Opinion
filed February 1, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00215-CR



Patrick Lynn
Hobbs, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 122nd District Court

Galveston County, Texas

Trial Court
Cause No. 09CR0986



 

MEMORANDUM OPINION 

Appellant Patrick Lynn Hobbs entered a plea of guilty
to possession of cocaine with intent to distribute after the trial court denied
his motion to suppress evidence.  In a single point of error, appellant argues
that the trial court erred when it denied his motion to suppress because his consent
to a vehicle search was obtained as a result of an illegal detention and he did
not voluntarily consent.  We affirm.

Background

On the day of appellant’s arrest, Houston Police
Department Lieutenant Dennis Gafford was conducting surveillance of a residence
in northeast Houston.  Prior surveillance of this residence had resulted in at
least two narcotics arrests.  Gafford observed conduct that he described as
consistent with narcotics trafficking.  Namely, an unidentified man opened a
gate separating the residence’s driveway from the street, appellant’s vehicle
entered the property, and the man closed the gate; six minutes later, the man
returned to the gate, opened it, and looked up and down the street before
appellant’s vehicle exited the property.

Gafford noticed that appellant’s vehicle was missing
a front license plate in violation of Texas law,[1]
and he followed appellant in an unmarked police vehicle.  He radioed for a
marked unit to initiate a traffic stop based on the missing license plate and
the suspicion of narcotics activity, but no marked unit was available. 
Eventually appellant pulled into an apartment complex in League City.  Three
League City Police Department officers responded to Gafford’s request and arrived
at the scene in separate marked patrol vehicles.

Sergeant Paul Odin arrived first, and he observed
appellant sitting in his parked vehicle speaking with a juvenile female who was
standing on the driver’s side of the vehicle.  Odin knew that the juvenile had
been involved in a previous narcotics arrest.  Odin parked his vehicle several
car lengths from, and to the left of, appellant’s vehicle.  Officer Walter
Hammond parked his vehicle to the left of Odin’s car.  The record does not
reflect where Officer Kelly Williamson parked her vehicle, but Gafford
testified that no vehicles were parked behind appellant’s vehicle.

Odin approached the juvenile and appellant on foot
and initially engaged the juvenile in conversation while Hammond stood further
away.  Odin introduced himself to the juvenile as an officer involved in the
previous narcotics arrest.  The juvenile immediately said she didn’t have any
narcotics, and she offered to allow Odin to pat her down.  Odin declined.  He
then began speaking with appellant, and both Odin and appellant described the
conversation as “cordial.”  Odin asked if appellant had narcotics in the
vehicle and “if he would mind if [Odin] searched his vehicle.”  Appellant said
Odin could “go ahead.”  By this time, three to four minutes had elapsed since
Odin approached the pair, and Williamson had arrived.  Both Hammond and
Williamson testified that they heard Odin’s question and appellant’s response
to “go ahead” with the search.  Appellant then exited the vehicle, and Odin
began a cursory search of the vehicle while Williamson spoke with appellant. 
Williamson testified that they spoke about the weather and appellant’s
daughter.

Less than five minutes after Odin obtained consent to
search, Gafford arrived at the scene.  Gafford approached appellant and engaged
in some “nonchalant” and “light conversation” before he confirmed with
appellant that appellant had consented to the vehicle search.  Gafford took
over the vehicle search and discovered a screwdriver in the console of the vehicle. 
His experience with investigations that involved narcotics concealed in false
dashboards of vehicles, along with the screwdriver and the appearance of the
dashboard on the vehicle, led him to suspect drugs might be hidden in the
dash.  While Gafford was removing the dashboard, appellant expressed concern
about potential damage to his vehicle, but Gafford assured appellant that he
would fix anything broken.

Gafford discovered a package in the dash and
instructed the League City officers to “hook up” appellant.  At this point,
appellant ran away, and he testified during the suppression hearing that he
“wanted to go for a jog” and that he just “felt like running.”  The package was
later determined to contain cocaine.  Every officer testified that appellant
never withdrew consent or voiced any objection to the search.  Appellant
testified that he did not feel threatened by the encounter.

Appellant filed a motion to suppress, and the trial
court denied the motion after a hearing.  Appellant then pleaded guilty, and
this appeal followed.

Analysis

            Appellant argues
that the trial court erred in denying his motion to suppress because (1) appellant
was being illegally detained when he told the officers they could search the
vehicle, and the State failed to prove by clear and convincing evidence that
appellant’s consent was attenuated from, and thus not tainted by, police
misconduct, and (2) the State failed to prove by clear and convincing evidence
that appellant voluntarily consented to the search.[2]  The State
responds that appellant waived the complaints he urges on appeal because he
failed to identify these points with specificity in the trial court. 
Alternatively, the State argues that the trial court did not err in denying the
motion.  We hold that appellant preserved the alleged error for our review, but
we reject appellant’s arguments on the merits—appellant was not detained at the
time he gave consent, and his consent was voluntary.

A.    Preservation
of Error

To preserve a complaint for appellate review, a party
must have presented to the trial court a timely request, objection, or motion
stating the specific grounds for the ruling desired.  Tex. R. App. P. 33.1(a).  A defendant’s appellate contention
must comport with the specific objection made in the trial court.  Broxton
v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).  A reviewing court
will not consider most errors, even of constitutional magnitude, not called to
the trial court’s attention.  See id.

A motion to suppress is nothing more than a specialized
objection to the admissibility of evidence.  Galitz v. State, 617 S.W.2d
949, 951 n.10 (Tex. Crim. App. 1981).  But appellant’s motion to suppress is
completely generic.  It makes no reference to consent, whether voluntary or
involuntary, or to detention without reasonable suspicion.  Upon the motion
alone, appellant’s complaints on appeal are not preserved.

However, error may be preserved without a specific
request in a motion to suppress if the grounds for the motion are otherwise
apparent from the record.  See Tex.
R. App. P. 33.1(a)(1)(A) (noting that specificity is not required if the
grounds were “apparent from the context”); Cooper v. State, 961 S.W.2d
222, 228 & n.6 (Tex. App.—Houston [1st Dist.] 1997, pet ref’d) (holding
that error was preserved despite a lack of specificity in the motion to
suppress because the items sought to be excluded were apparent from the context
at the hearing); Park v. State, No. 13-08-00543-CR, 2010 WL 1115678, at
*1 (Tex. App.—Corpus Christi Mar. 25, 2010, no pet.) (mem. op., not designated
for publication) (same).  In this case, the transcript of the hearing on the
motion to suppress reveals detailed testimony from five witnesses—four officers
and appellant himself—and significant argument on the issues presented by this
appeal.  Therefore, we hold that appellant’s complaints are preserved for
appeal.

B.     Standard
of Review

We review a motion to suppress under a bifurcated
standard of review.  Vasquez v. State, 324 S.W.3d 912, 918 (Tex.
App.—Houston [14th Dist.] 2010, no pet. h.) (citing Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997)).  The trial court is the sole finder of
fact and is free to believe or disbelieve any or all of the evidence presented
at a suppression hearing.  Wiede v. State, 214 S.W.3d 17, 24–25 (Tex.
Crim. App. 2007).  We give almost total deference to the trial court’s
determination of historical facts that depend on credibility and demeanor of
witnesses, but we review de novo the court’s application of the law to the
facts.  Id. at 25.  When, as here, there are no written findings of fact
in the record, we uphold the ruling on any theory of law applicable to the case
and presume the trial court made implicit findings of fact in support of its
ruling so long as those findings are supported by the record.  Id.  We
view the evidence presented on a motion to suppress in the light most favorable
to the trial court’s ruling.  Id. at 24.

C.   
Detention and Tainted Consent

If police obtain
evidence as the result of a consensual search during an illegal seizure, a defendant
may have the evidence suppressed unless the State proves that the causal
relationship between the police misconduct and the defendant’s consent is
attenuated—that is, the illegal seizure did not taint the otherwise voluntary
consent.  Brick v. State, 738 S.W.2d 676, 681 (Tex. Crim. App. 1987); Munera
v. State, 965 S.W.2d 523, 532 (Tex. App.—Houston [14th Dist.] 1997, pet.
ref’d).  We hold that appellant was not seized at the time he gave consent, and
thus, the State was not required to show attenuation.

There are three categories of citizen–police
interactions: (1) encounters, (2) investigative detentions, and (3) arrests.  State
v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).  We consider the
totality of the circumstances to assess whether the police interaction is an
encounter, detention, or arrest.  Hunter v. State, 955 S.W.2d 102, 104
(Tex. Crim. App. 1997).  If a reasonable person would feel free “‘to disregard
the police and go about his business,’” the interaction is an encounter for
which the Fourth Amendment is not implicated.  Id. (quoting Florida
v. Bostick, 501 U.S. 429, 434 (1991)).  The key question is “‘whether the
police conduct would have communicated to a reasonable person that the person
was not free to decline the officers’ requests or otherwise terminate the
encounter.’”  State v. Garcia-Cantu, 253 S.W.3d 236, 242 (Tex. Crim.
App. 2008) (quoting Bostick, 501 U.S. at 439).

Here, appellant argues that the interaction with
police was a detention because (1) the officers made a display of authority by
their numbers and uniforms, and (2) the officers boxed in his vehicle.  When an
officer “blocks in” a vehicle and prevents a voluntary departure, a detention
usually occurs.  See id. at 246 n.44.  However, when the vehicle is only
partially blocked or departure is difficult but possible, “such action is not
necessarily, by itself, sufficient to constitute a Fourth Amendment
detention.”  Id.  At the time appellant consented to the search, there
were no police vehicles blocking his departure.  Two vehicles were parked to
the left of his vehicle, but no vehicle was parked behind him.  The fact that there
were three officers in uniforms weighs in appellant’s favor, but the record
reflects that only Odin approached him.  Odin declined to frisk appellant’s
companion when she offered, and appellant testified that the conversation was
cordial.  Appellant also testified that he did not feel threatened.  While the
search was ongoing, he engaged in casual conversation with another officer
about the weather and his daughter.  The fact that Odin asked about narcotics
and requested consent to search appellant’s vehicle did not convert this
consensual encounter into a detention—the officers did not suggest that
compliance was in any way mandatory.  See Hunter, 955 S.W.2d at 106 (“A
police officer’s asking questions and requesting consent to search do not alone
render an encounter a detention.  Only if the officer conveyed a message that
compliance was required has a consensual encounter become a detention.”
(emphasis omitted)).  Finally, as the search came to an end, appellant not only
felt free to leave, but he did leave.  He testified that he ran from the scene
because he “wanted to go for a jog” and just “felt like running.”  He was not
seized until officers eventually subdued him.  See Brendlin v. California,
551 U.S. 249, 254 (2007) (“[T]here is no seizure without actual submission . .
. .”).

Considering the totality of the circumstances in this
case, we conclude that appellant’s interaction with police was a consensual
encounter.  Therefore, appellant was not illegally seized.

D.    Voluntary
Consent

Consent to search is one of the well-established
exceptions to the constitutional requirement that a police officer have
probable cause before conducting a search of a vehicle.  See State v.
Ibarra, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997); Vasquez, 324
S.W.3d at 921–22.  The State must prove by clear and convincing evidence that
the consent to search was voluntary.  Ibarra, 953 S.W.2d at 243; Vasquez,
324 S.W.3d at 922.  We consider the totality of the circumstances to assess
whether a defendant’s consent to search was voluntary.  Reasor v. State,
12 S.W.3d 813, 818 (Tex. Crim. App. 2000).  A nonexhaustive list of factors to
consider includes: (1) the accused’s age, (2) the accused’s education and intelligence,
(3) whether the accused is informed of his right to refuse consent, (4) any
constitutional advice given to the accused, (5) the length of the interaction
with police, (6) the repetitive nature of questioning, and (7) the use of
physical punishment.  Id.

Appellant provided consent to two different officers
at two different times during the encounter with police.  Appellant was
thirty-nine years old when he gave consent, and he had at least one child. 
Appellant not only demonstrated intellect in succinctly answering direct and
cross examination questions during the suppression hearing, but he also
admitted to possessing some knowledge about consent and warrants.  He does not
dispute the officers’ testimony that, other than the initial question about whether
he was carrying narcotics, conversations during the search of his vehicle were
completely casual.  He testified that he did not feel threatened when Odin
asked to search the vehicle, and he concedes that the length of the encounter
does not support his argument.  Considering the totality of the circumstances
in this interaction, the record supports the trial court’s conclusion that
consent was voluntary.

Conclusion

Appellant was not seized when he voluntarily
consented to the search of his vehicle.  Accordingly, appellant’s point of
error is overruled, and we affirm the trial court’s judgment.

 








                                                                                    

                                                                        /s/        Sharon
McCally

                                                                                    Justice

 

 

Panel consists of Justices Anderson,
Seymore, and McCally.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
See Tex. Transp. Code Ann.
§ 502.404(a) (West Supp. 2009).





[2]
Although appellant appears to collapse these issues in a single point of error,
he raises both arguments in this court, and we address each separately as we
are required to do.  See, e.g., Arcila v. State, 834 S.W.2d 357,
358–59 (Tex. Crim. App. 1992) (noting the “considerable overlap” between these
issues, but suggesting that a court of appeals decision would be “incomplete”
if it does not address each issue separately because the Court of Criminal Appeals
“has for some time taken the position that an attenuation analysis is logically
distinct from one involving only questions of voluntariness”), overruled on
other grounds by Guzman v. State, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997);
see also McKenna v. State, No. 14-06-00270-CR, 2007 WL 2417419, at *2–3
(Tex. App.—Houston [14th Dist.] Aug. 28, 2007, pet. ref’d) (mem. op., not
designated for publication) (addressing these issues separately).